DAVID PETRIKIN, Plaintiff in error and Defendant below, *v.* NATHANIEL COLLIER, Defendant in error and Plaintiff below.

Though a partnership for a single transaction, or in a contract upon a canal, mutually terminates with the completion of the purposes for which it was formed, yet as between the partners themselves and others, it continues for the purpose of winding up its affairs.

Thus when partners, who were contractors, received their final estimate, and some days after, one of them gave a note in the name of the firm, to a person who had been in their employ, for the amount due to him, for labour, &c. upon the contract, it was held that he had as full power to give such note as he had at any previous period.

ERROR to the Common Pleas of Columbia county.

This was an action on the case, brought by Collier against Petrikin, Madden & Co., for work, labour, and services, money loaned, &c. The summons was returned "served" upon Petrikin, and *nihil* as to the other defendants.

The facts were, that in and previous to the year 1839, the defendant Petrikin, and one Madden with another, were associated together as partners in a contract for the construction of certain locks, &c., upon the Tide Water Canal, under the firm of Petrikin, Madden & Co. Collier was in their employ. The work of the partnership being finished, on the 25th December, 1839, they drew from the Canal Company their final estimate. On the 28th December, 1839, Madden, for the firm, gave to Collier a due bill in this form:

"December 28th, 1839, due Nathaniel Collier a balance on settlement, for work, four hundred and eighty-eight dollars and eighty-six cents; and one hundred and sixty-eight dollars on due bill.

$488 86                 PETRIKIN, MADDEN & Co."
 168 00

―――――

$656 86

Upon the trial, a number of points were made by the counsel of the plaintiff, and of the defendant, which are sufficiently set forth in the answers of the court, contained in the following charge to the jury by President Anthony.

"When a partnership is established, any one of the partners has a right to bind his copartners by due bill for work done, or for money lent for the use of the partnership concern; and if you believe the evidence in the cause, Collier was in the employ of the firm and worked for them on the section. A note or due bill signed by one partner in

the name of the firm, is primâ facie evidence that it was given for the debt of the firm; so that in the present case if you believe the partnership is proved, and that the note was given by the firm, or one of its partners, for the debt of the firm, your verdict, should be for the plaintiff.

"But it is alleged by the counsel for the defendant, that the partnership ceased previous to the date of the due bill, and that James Madden had no authority to bind David Petrikin on the 28th December, 1839. To this proposition the court cannot assent; for if the jury believe Nathan Collier worked on the Section No. 4, or Lock No. 2, during the existence of the partnership, he must have had actual notice of the dissolution of the partnership before he could be affected thereby. If he were a creditor of the firm, the partners would be liable on the due bill signed in the name of the firm, without notice to him of its dissolution.

"The counsel for both parties have requested the court to instruct the jury on a number of points subscribed by them, which the court will cheerfully answer, and the law as applicable to the case is laid down as the court understands it; and although you are the exclusive judges of the facts, you will take the law from the court.

"To the 1st point made by the plaintiff, the court answer: That if the jury believe the partnership is made out as alleged in the declaration, and if the jury are satisfied that the due bill, given in evidence, was signed by James Madden in the name of the firm, while the connection subsisted between the partners, before a final settlement took place, or before Nathan Collier had any actual notice of the dissolution of the firm, then the plaintiff ought to recover the amount of the due bill with interest, after deducting the credit endorsed thereon.

"To the 2d point, the court answer: That if the jury believe that James Madden signed the due bill after the dissolution of the firm, in the name of the firm, yet if the jury believe that the due bill was given for a partnership transaction during the existence of the partnership, the plaintiff is entitled to recover.

"To the 3d point, the court answer: That if money was loaned to James Madden on account of the firm during its existence, and he applied it to his own private and separate use, without the knowledge of Nathan Collier, the other partners in the joint contract would be responsible for the money as well as James Madden, and that covin, fraud or collusion must be shown on the part of Collier in order to prevent his recovery of the firm.

"To the 4th point, the court answer in the affirmative.

To the 1st point made by the defendant, the court answer: That

contractors on a canal are not to be considered as partners in trade, further than for the purposes of performing the contract and conducting it to completion, but so far as relates to a joint contract, the contractors are liable as partners in trade, for funds provided and workmen employed to carry on the work, unless there is an express agreement to the contrary, and that agreement is known to the person who furnishes the funds or does the work for the joint contractors.

" To the 2d point, the court answer: That after the work is finished, one joint contractor cannot create a new liability on the part of another joint contractor, but he would have a right to give a due bill in the name of the firm, for work and labour done or for money borrowed before the work was finished to carry on and complete the joint contract, and for such due bill the members of the firm or joint contractors would be responsible.

" To the 3d point, the court answer: If the jury believe that the due bill given in evidence was made after the canal sections were finished, it would furnish evidence to charge the defendant, unless the due bill was given after a settlement took place between the joint contractors, and the connection between them was dissolved, and the plaintiff had notice of such dissolution before he took the due bill. The due bill is primâ facie evidence that it was given for the debt of the firm, and unless the plaintiff had notice of its dissolution before he took it, it is binding upon the defendant. The court know of no evidence that the plaintiff knew of the dissolution; if the jury can find any such evidence they will consider it.

" To the 4th point, the court answer: That if the jury believe the consideration of that part of the due bill of December 28th, 1839, which mentions the $168 00 on due bill, was for work done or for money lent by Nathan Collier to carry on the joint contract, then the evidence is sufficient to charge the defendant with the $168 00."

The jury found a verdict for plaintiff, on which judgment, and in this court, the plaintiff in error assigned for error the whole of the first paragraph of the charge above given; the whole of the second paragraph; the answers to the points of the plaintiffs below, and the answers to the point of the defendant below.

*Comly,* for plaintiff in error.

This due bill is a mere acknowledgment of a pre-existing debt. Chitty on Bills, 558. One partner cannot, after dissolution of the partnership, bind his copartner. 15 Johns. R. 409; 9 Cowen, 57; Id. 420; 3 Johns. Rep. 529; 3 Kent, 50; 17 Serg. & Rawle, 129.

*Montgomery,* contrà.

After a dissolution, one partner cannot create any new liability that will bind his copartner. But here the partnership was not dissolved— its business was not settled up, its hands not paid off and its debts not discharged.   5 Wharton, 530; 3 W. & S. 345.

*Cooper,* on the same side, argued as to the distinction between acknowledgments which create a new liability after the dissolution, and those which concern liabilities which existed before.   He cited 3 Kent, 50.

*Greenough,* in reply.

The opinion of this court was delivered by SERGEANT, J.

Partnerships for general purposes are of different kinds, in respect to their duration.   They may be limited in time and expire by their own limitation, or they may be unlimited in time and become destroyed by various acts or events that produce a disruption of the connection, such as death, bankruptcy, felony, lunacy, war, mutual consent, or the will of one party.

There are also partnerships for a single dealing or transaction only, and the natural termination of such a connection is, the completion of the purposes for which the partnership was formed.   Gow on Partnership, 218.   The case before us is of the latter description, and the question is, whether the partnership had terminated, so as to take away the power of the respective partners at the time when the note was given on which this suit was brought: for as to dissolution otherwise, there is no act or circumstance in the case, of any kind, that tended to determine it sooner than it would expire of itself.   It was a partnership in a contract, for a job on the canal, and its determination took place when the business relating to that contract was completed.   Was that business completed by the finishing of the work and the payment of the final estimate to one of the partners? I think not.   There were other important things to be done ; and amongst them, the accounts with the hands that did the work were to be adjusted, and the debts of the partnership paid.   There were very material parts of the business which the contracts embraced, essential to its being wound up, and required by considerations of mutual safety and justice between the parties, as well as of honesty to others.   It would be a strange interpretation of the engagement between them, to say, that as soon as the last stroke of work was done, one of the partners might go to secure the money, and then aver that the partnership became *eo instante* dissolved, and the relations of the partners as between them-

selves and others ended. ·We are of opinion that the partnership still continued, and was in full force on the 28th December, 1839, when the note was given, notwithstanding the payment of the final estimate, on the 25th ;—that no act or circumstance had occurred to dissolve it, nor did it thus expire by the nature of the dealing or transaction, and therefore one partner had as full power to give a note binding the firm, as he had at any previous period. The note was primâ facie evidence of a debt, and conclusive in the absence of countervailing proof on the part of the defendant, and the court were right in so leaving it to the jury. If the court erred in any thing, it was in leaving the case more favourably to the defendant than they ought to have done : but this is an error of which the defendant has no right to complain.

Judgment affirmed.